UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

In re:

LARRY G. DUNN                                              Bk No. 08-70326
LINDA C. DUNN,

      Debtors.

LANCS INDUSTRIES, INC.,

      Plaintiff.

v.                                                         AP No. 08-70015

LARRY G. DUNN
LINDA C. DUNN

      Defendants.

## MEMORANDUM OPINION

This case came before the court on August 12, 2010 for hearing on Lancs Industries, Inc's ("Movant") Motion for Summary Judgment. Paul Joseph Spina, III appeared on behalf of the Movant; Marshall Entelisano appeared on behalf of Linda C. Dunn. After consideration of the evidence submitted and the arguments of counsel, this court **GRANTS** the Movant's Motion for Summary Judgment and **DENIES** Linda C. Dunn her discharge pursuant to § 727(a)(5).

## JURISDICTION

The Bankruptcy Court has jurisdiction of this case pursuant to 28 U.S.C. § 1334(a). This court has jurisdiction of this issue, a core bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

1

# FINDING OF FACTS

Larry G. Dunn and Linda C. Dunn ("the Dunns") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on February 20, 2008. (Bk. Doc. 1). The case was converted to one under Chapter 7 of the Bankruptcy Code on July 14, 2009. (Bk. Doc. 86).

On March 27, 2008, the Movant commenced this adversary proceeding when it filed a complaint against the Dunns seeking a determination that the debt owed to the Movant is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(2)(A). (AP Doc. 1). On February 23, 2009, Movant and Larry G. Dunn entered into a consent judgment whereby the Movant was granted a "Non-Dischargeable Judgment in its favor against Larry G. Dunn in the amount of $198,884.84." The debt owed to Movant was found to be "specifically exempt from any discharge order awarded to the Defendant, Larry G. Dunn, in the Chapter 13 case or any such future new or converted case under any Chapter in accordance with 11 U.S.C. § 523(a)(4)." (AP Doc. 36). The complaint against Linda C. Dunn was not resolved by this consent judgment, and the adversary proceeding remains pending as to her. On August 10, 2009, Movant filed an amended complaint that added two counts to the original complaint; the first additional count seeks a determination that the debt owed to the Movant is nondischargeable pursuant to 11 U.S.C. § 523(a)(6); the second additional count seeks a determination that the Linda C. Dunn is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3), (4), (5), and (6). On June 22, 2010, the Movant filed this Motion for Summary Judgment seeking a determination by this court that the debt owed to it is nondischargeable pursuant to § 523(a)(4) and § 523(a)(6) as a matter of law; Movant also seeks a determination that Linda C. Dunn is not entitled to a discharge pursuant to § 727(a)(5) as a matter of law. (AP Doc. 84).

The facts set forth in the Motion for Summary Judgment are uncontroverted.[1] As such, the following facts are taken from the Motion for Summary Judgment and the attached exhibits. At all times material to this proceeding, Larry G. Dunn was employed by the Movant as a bookkeeper. As bookkeeper, Larry G. Dunn processed the accounts receivables as they came into the company and also handled the payment of accounts due and payable. The payment of accounts due and payable by the Movant to its vendors involved multiple steps. First, invoices from company vendors were approved for payment. These invoices were then entered into the company accounting system as due and payable. When an invoice was to be paid, it was assigned a check number in the Movant's accounting system that correlates to the actual paper check that would be written and delivered to the vendor. Then, the corresponding actual paper checks were prepared and given to the authorized officer of the corporation for signing. At all times material to this proceeding, Movant maintained a checking account with Bank of America for payment of these invoices. The authorized signors on the account were Timothy S. Wiest and Priscilla R. Wiest.

Larry G. Dunn, or someone acting on his behalf and at his direction, embezzled money from the Movant from December 23, 2003 through February 25, 2005. In his embezzlement scheme, Dunn would enter fictitious invoices from Movants' vendors into the company accounting system for payment. He would then falsify the accounting records to show that these fictitious invoices had been paid. However, when the checks were actually written for the amounts shown on the fictitious

---

[1] Throughout this proceeding, Linda C. Dunn declined to cooperate with discovery requests, citing her right to avoid self-incrimination pursuant to the Fifth Amendment of the United States Constitution. Due to the refusal to provide any records, be deposed, or sign an affidavit, there was no opposition to this Motion for Summary Judgment. The attorney for Linda C. Dunn appeared at the hearing, stating that he could offer no evidence to contradict the facts asserted by the Movant. As such, this court takes the facts asserted in the Motion for Summary Judgment as true for purposes of this proceeding.

3

invoices, they were not written as payable to the vendors as shown on the accounting system. Instead they were made payable to Larry G. Dunn individually or to creditors of Larry G. Dunn or Linda C. Dunn. As set forth in the affidavits of Timothy S. Wiest and Priscilla R. Wiest, at no time during his employment as a bookkeeper was Larry G. Dunn authorized to use Movant's funds to pay himself directly or to pay for the personal or marital obligations owed by him or his wife, Linda C. Dunn. Further, he was not authorized to sign the names of Timothy S. Wiest and Priscilla R. Wiest to these checks. Therefore, the signatures of Timothy S. Wiest and Priscilla R. Wiest, the only authorized signors on the Movant's checking account, on the checks at issue in this Motion for Summary Judgment are forged and not their authentic signatures. When the monthly bank statements were received by Movant and given to Larry G. Dunn for account reconciliation, he would intercept and remove any forged checks to prevent their discovery. Larry G. Dunn pled guilty to criminal charges stemming from the embezzlement scheme alleged by Movant. A copy of the Plea Agreement was submitted by the Plaintiff .as Exhibit I.

The forged checks were used in one of three ways: (1) Checks were directly deposited into the joint, personal, marital bank account of Linda C. Dunn and Larry G. Dunn; (2) Checks were paid directly to creditors of Linda C. Dunn to pay her own personal or marital expenses; or (3) Checks were paid directly to creditors of Larry G. Dunn to pay his own personal or marital expenses. Incorporated into the Motion for Summary Judgment is the affidavit of Timothy S. Wiest. Exhibit A is a spreadsheet summarizing each of the checks forged by Larry G. Dunn and embezzled from the Movant's checking account. Each check was entered into the Movant's accounting system as a check payable to a true and correct corporate vendor for a true and correct corporate debt. Then, when the check was prepared, it was instead made payable either to Larry G. Dunn or to a creditor

4

of Linda C. Dunn or Larry G. Dunn. This spreadsheet itemizes these forged checks and provides a summary of: (1) the vendor for which each check was entered into the system; (2) the true payee of the check; and (3) the amount of each forged check. The spreadsheet also categorizes these checks into one of three categories: (1) checks deposited into the joint checking and savings account of the Dunns; (2) checks written to creditors of Linda C. Dunn; (3) checks made payable to creditors of Larry G. Dunn, individually; and (4) checks where benefit is unknown.

### I. Checks Deposited Into Joint Checking and Savings Account

In April 2003, the Dunns opened a joint checking and savings account at the Millcreek branch of Bank of America. The Movant attached the monthly bank statements for such joint checking and savings account. A number of the checks enumerated on Exhibit A to the affidavit of Timothy S. Wiest were forged by Larry G. Dunn and made payable to himself. Copies of these checks, as well as the screen print of the false accounting system entry by Larry G. Dunn for each, are attached collectively as Plaintiff's Exhibit B and are designated "Group 1 Checks." These checks were deposited into the bank account at Bank of America controlled by the Dunns. The checks in this category can be directly traced to deposits into the Dunns' Bank of America account. The total dollar amount of the checks forged by Larry Dunn made payable to himself and deposited into the joint marital bank account totals $124,156.43.[2] Larry G. Dunn was not authorized to write to himself

---

[2] The Movant attached numerous exhibits to its Motion for Summary Judgment. Exhibit A is titled "Summary of the Forged and Embezzled Checks." Exhibit A places the checks forged and embezzled by the Debtor's husband into various groups. The first group is "Checks deposited into joint bank account of Larry and Linda Dunn," the checks at issue here. Exhibit A shows that $140,643.03 in embezzled funds were deposited into the joint account. However, in cross-referencing the checks shown on Exhibit A with the deposited checks shown on Exhibit C titled "Monthly Bank Statements," the court could only verify that $124,156.43 in embezzled funds were deposited into the joint bank account. It appears that some pages are missing from the Monthly Bank Statements.

5

the checks listed in this category. Further, the signature on each check is a forgery. These checks are part of and are included in the amounts to which Larry G. Dunn had pled guilty to embezzling, and the amounts were included in the judgment amount to which he has consented in this case.

The monthly statements for this account for all times relevant to the allegations in this complaint, are attached collectively as Plaintiff's Exhibit C. The statements cover a time period of 27 months: May 2003 through July 2005. During this time period $302,498.00 was deposited into the joint checking and savings account, and $102,120.00 in cash was withdrawn. From December 2003 to March 2005, $124,156.43 of the funds deposited were funds embezzled by the Debtor's husband ("Embezzled Funds").

## II. Checks Written to Creditors of Linda C. Dunn

This second category of checks includes those checks embezzled by Larry G. Dunn from the Movant's account which were made payable directly to personal or marital creditors of Linda C. Dunn. Larry G. Dunn was not authorized to write these checks or pay Linda C. Dunn's personal expenses with Movant's funds. The signature contained on each of the checks is a forgery. These checks are part of and are included in the amounts to which Larry G. Dunn has pled guilty to embezzling, and are included in the judgment to which he has consented in this case. The total dollar amount of checks in this category is $28,364.75. A detailed description of these checks follows.

Check number 41539 in the amount of $16,177.16 was written as payable to Capital One Auto Finance. In the Movant's accounting system, Larry G. Dunn designated this check as payable to Sea Fab Metals. Sea Fab Metals never received such a payment. As shown on the business records provided by Capital One Services LLC, on behalf of Capital One Auto Finance, Linda C.

6

Dunn and Larry G. Dunn applied for and received a loan from Capital One Auto Finance to purchase a 2003 Hyundai Tiburon vehicle. Their application, Retail Installment Contract and other documents relating to the purchase and finance of this vehicle are attached to the affidavit of Joel Gardner. Included in these documents is an account pay history which indicates that the account was paid in full with a check received December 14, 2004, in the amount of $16,177.16. This directly matches the check forged by Larry G. Dunn in the same amount to the same vendor. The check and the corresponding documents are attached as Plaintiff's Exhibit D.

Check number 41761 in the amount of $6,836.23 was written as payable to Providian. In the Movant's accounting system, Dunn designated this check as payable to Alpha Associates. Alpha Associates never received such a payment. According to the affidavit of Andrea Stalba, Legal Assistant for Washington Mutual Bank, successor in interest to Providian National Bank, this check was received by Providian and used to pay the Providian National Bank Visa account of Linda C. Dunn. Further, the monthly statements of this account indicate that on February 18, 2005, payment of $6,836.23 was received and used to pay the outstanding balance owed on the Linda C. Dunn account. The check and the corresponding documents are attached as Plaintiff's Exhibit E.

Check number 41762 in the amount of $2,842.72 was written as payable to Capital One. This check was paid on the Capital One credit card account of Linda C. Dunn. In the Movant's accounting system, Larry G. Dunn designated this check as payable to Deerfield Urethane. Deerfield Urethane never received such a payment. The check and corresponding documents are attached collectively as Plaintiff's Exhibit F.

Check number 41765 in the amount of $1,620.59 was written as payable to Capital One. The check was paid on the Capital One credit card account of Linda C. Dunn. In the Movant's

7

accounting system, Larry G. Dunn designated this check as payable to Seattle Textiles. Seattle Textiles never received such a payment. The check and corresponding documents are attached as Plaintiff's Exhibit G.

Check number 41211 in the amount of $478.93; check number 41469 in the amount of $255.07; and check number 41408 in the amount of $154.05 were written as payable to Cingular Wireless. These checks were used for the payment of bills due on Linda C. Dunn's Cingular Wireless account. The account number assigned to Linda C. Dunn is stamped on the back on each of the forged and embezzled checks. In Movant's accounting system, Larry G. Dunn correctly designated these checks as payable to Cingular Wireless who is a vendor of Movant. Larry G. Dunn was not authorized to pay the bill owed by Linda C. Dunn to Cingular Wireless. The checks and the corresponding documents are attached as Plaintiff's Exhibit H.

### III. Checks Made Payable to Creditors of Larry G. Dunn, Individually

In this group, the checks were written as payable to creditors of Larry G. Dunn, individually. Because Larry G. Dunn consented to judgment that this debt be non-dischargeable, and this Motion for Summary Judgment is only against Linda C. Dunn, these checks are not relevant to this motion.

### IV. Checks Where Benefit is Unknown

In this group, it is not clear who benefitted from the payments. Therefore, the Movant is not seeking summary judgment on these amounts.

### CONCLUSIONS OF LAW

Before this court is the Movant's Motion for Summary Judgment which seeks summary judgment as to the causes of action brought pursuant to § 727(a)(5) of the Bankruptcy Code[3]; §

---

[3]All section references are to the Bankruptcy Code unless stated otherwise.

523(a)(4); and § 523(a)(6). Therefore, the issues before this court are whether, as a matter of law, Linda C. Dunn should be denied a general discharge pursuant to § 727(a)(5) and whether, as a matter of law, the debt owed to Movant is nondischargeable pursuant to § 523(a)(4) & § 523(a)(6). The cause of action brought pursuant to § 727 will be addressed first because if Linda C. Dunn is denied a general discharge, all the debts that she owes will be nondischargeable, and there will be no need to determine whether the debt owed to Movant is nondischargeable pursuant to § 523.

I. Section 727

Section 727 provides, in pertinent part, that:

(a) The court shall grant the debtor a discharge, unless-

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a)(5). "[Section] 727 of the Bankruptcy Code allows debtors to receive a general discharge of their obligations in keeping with the primary purpose of bankruptcy law, to give honest debtors a fresh start 'unhampered by the pressure and discouragement of preexisting debt.'" Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994) (quoting Lines v. Frederick, 400 U.S. 18, 19, 91 S. Ct. 113, 114, 27 L. Ed. 2d, 124 (1970)). A leading treatise on bankruptcy law provides:

> The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. Courts have noted that "a total bar to discharge is an extreme penalty." The reasons for denial of discharge must be real and substantial rather than technical and conjectural. However, "[w]hile the law favors discharges in bankruptcy, it will not ordinarily tolerate the [debtor's] intentional departure from honest business practices where there is a reasonable likelihood of prejudice."

6 COLLIER ON BANKRUPTCY ¶ 727.01[4] (15th ed. rev. 2008). See also Micro Connections, Inc. v.

9

Shah (In re Shah), 388 B.R. 23, 32 (Bankr. E.D.N.Y. 2008) (stating that because a discharge is vital to the fresh start contemplated by bankruptcy, § 727, which provides grounds for the denial of a debtor's discharge, "must be strictly construed against the party objecting to the debtor's discharge and liberally in favor of the debtor" ).

In a trial on a complaint objecting to a discharge, the plaintiff bears the burden of proving that a discharge is unwarranted. FED. R. BANKR. P. 4005. To carry its burden, the plaintiff must prove such discharge is unwarranted by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). If the plaintiff establishes a prima facie case, the burden shifts to the debtor to make a credible explanation of his actions. Buckeye Retirement Co., L.L.C. v. Howells (In re Howells), 365 B.R. 764, 768 (Bankr. N.D. Ohio 2007).

A plaintiff bears a heavy burden in a trial to deny a debtor his discharge pursuant to § 727; the burden is even greater in this case because Movant seeks to deny Linda C. Dunn her discharge through a Motion for Summary Judgment. Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, governs the procedures for summary judgment and provides in pertinent part: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c). "The burden of showing the absence of any genuine dispute as to material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

To prevail on its Motion for Summary Judgment as to the § 727(a)(5) cause of action, the Movant must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to all the requirements of § 727(a)(5). As set out above in the Finding of Facts, the facts set forth in the Motion for Summary Judgment are uncontroverted; therefore, Movant has established that there is no genuine issue of material fact. As a result, the only issue before the court is whether the uncontroverted facts establish that Movant is entitled to judgment as a matter of law on the cause of action brought pursuant to § 727(a)(5). To establish that it is entitled to judgment as a matter of law on the cause of action brought pursuant to § 727(a)(5), the Movant must show that: (1) Linda C. Dunn experienced a loss or deficiency of assets; and (2) Linda C. Dunn cannot provide a satisfactory explanation for such loss. 11 U.S.C. § 727(a)(5). Put another way:

> The initial burden is on the [Movant] to establish the loss or deficiency of assets by demonstrating that (1) at a time not too remote from the bankruptcy, the Defendant owned identifiable assets; (2) on the day he commenced his bankruptcy case, the Defendant no longer owned the particular assets in question; and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an adequate explanation for the disposition of the assets in question.

Hendon v. Lufkin (In re Lufkin), 393 B.R. 585, 595 (Bankr. E.D. Tenn. 2008). See also, Huntington Center Partners, Ltd., v. Dupree (In re Dupree), 197 B.R. 928, 938 (Bankr. N.D. Ala. 1996) ("Section 727(a)(5) mandates that 'it is the Plaintiff's burden to establish that the Debtor had [an] interest in property of some substance not too far removed from the date of the commencement of the case and on the date of the commencement of the case, he no longer had that property and when the Debtor was called upon to explain the non-existence of the property, he was unable to furnish a satisfactory explanation.'") (quoting Ins. Co. of North America v. White (In re White), 177 B.R. 110, 115 (Bankr. M.D. Fla. 1994))

The Movant argues that the Embezzled Funds constitute an asset, the loss of which Linda C. Dunn has failed to satisfactorily explain. The court will first address whether the Embezzled Funds constitute an asset of Linda C. Dunn. The Embezzled Funds were embezzled by Larry G. Dunn and then deposited into the joint checking and savings account of Larry G. Dunn and Linda C. Dunn. If Linda C. Dunn had filed bankruptcy before the Embezzled Funds had been spent, the Embezzled Funds would undoubtedly have been property of her estate. See 11 U.S.C. § 541. When the Dunns filed bankruptcy on February 20, 2008, the Embezzled Funds were no longer in the Dunns' joint checking and savings account. Schedule B shows only one bank account maintained by the Dunns, a bank account with The Credit Union of Alabama with a balance of $175.00.[4] (Bk. Doc. 1). The Movant has shown that Linda C. Dunn suffered a loss of the Embezzled Funds.

The court will next address whether the loss of the Embezzled Funds occurred at a point in time "not too remote" from the filing of the bankruptcy petition. Linda C. Dunn and her husband, Larry G. Dunn, filed a joint bankruptcy petition under Chapter 13 of the Bankruptcy Code on February 20, 2008. The Embezzled Funds were deposited into their joint checking and savings account from December of 2003 through March of 2005. By the time the Dunns filed bankruptcy on February 20, 2008, the Embezzled Funds were no longer held in any depository institution. In short, over a sixteen-month period that ended roughly three years prior to the Debtors filing bankruptcy, about $125,000.00 in embezzled funds was deposited into Linda C. Dunn's joint checking and savings account and then was dissipated. In determining whether the loss of the $125,000.00 is "not too remote" from the filing of the bankruptcy petition, it should first be noted

---

[4]There are two Amended Schedule Bs filed in the Debtor's bankruptcy case, but neither of them amended the entry relating to bank accounts owned by Linda C. Dunn and/or her husband. (Bk. Doc. 43 & 102).

12

Case 08-70015-CMS    Doc 89    Filed 12/03/10    Entered 12/03/10 14:19:54    Desc Main
Document      Page 12 of 16

that there is no time requirement contained in § 727(a)(5). 11 U.S.C. § 727(a)(5); see also, Hawley v. Cement Ind., Inc. (In re Hawley), 51 F. 3d 246, 249 n.1 (11th Cir. 1995) ("[Debtor] also asserts that the loss of assets must occur within a year's time in order to deny a discharge under 11 U.S.C. § 727(a)(5). At the outset, we find that neither § 727(a)(5) nor *In re Chalik*, 748 F. 2d 616 (11th Cir. 1984) support such a contention."). Therefore, in making the determination as to whether the loss of an asset is "not too remote" to warrant an explanation, the court must determine whether such loss is large enough and close enough to the filing of the bankruptcy petition that the court would expect a debtor to remember what happened to the asset and be capable of explaining what happened to the asset. See, e.g., Lini, Inc., v. Schachter (In re Schachter), 214 B.R. 767, 774 (Bankr. E.D. Penn. 1997) ("The Plaintiff properly focuses on the Debtor's inability to explain the loss or expenditure of the $250,000 which he realized when he refinanced his home in 1990. This is a very large sum for which the Debtor should be called to account, despite the passage of seven years."). In the instant case, approximately $124,000.00 in Embezzled Funds was deposited into Linda C. Dunn's joint checking and savings accounts over a sixteen-month period. Three years later, the $124,000 was no longer held in any depository institution. One-hundred-twenty-four thousand dollars is a large sum of money, large enough that this court would expect Linda C. Dunn to be able to explain what happened to it, even three years later. Therefore, this court finds that the dissipation of $124,000.00 three years before the filing of a bankruptcy petition is "not too remote" from the filing of such bankruptcy petition.

      The Movant has shown that Linda C. Dunn experienced a loss of assets at a time not too remote from the filing of this bankruptcy petition. Having done so, "the burden shifts to the debtor to explain satisfactorily the loss." Chalik v. Moorefield (In re Chalik), 748 F. 2d 616, 619 (11th Cir.

13

1984). "'The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of his assets.'" Id. (quoting First Texas Sav. Ass'n., Inc. v. Reed (In re Reed), 700 F. 2d 986, 992-93 (5th Cir. 1983)). "To be satisfactory, 'an explanation' must convince the judge." Id. "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." Id. In this case, the Debtor has not proffered any evidence that explains what happened to the Embezzled Funds that were deposited into the joint checking and savings accounts; however, the evidence submitted by the Movant does provide an explanation. The Movant proffered the bank records from May 2003 through July 2005. These bank records show what money was deposited into the joint checking and savings account during this time period and also show how such money was dissipated. Normally, these bank records would provide a satisfactory explanation as to what happened to the money deposited into the joint checking and savings account of Linda C. Dunn. However, upon examination of the bank records, it became apparent that large sums of cash were being taken out of the bank account. The bank records show that from May 2003 through July 2005, $302,498.00 was deposited into Linda C. Dunn's joint bank account and that approximately $102,000.00 in cash was withdrawn. A review of the bank records shows 27 of these cash withdrawals were equal to or in excess of $1,000.00. Three were for $3,000.00 and one was for $4,000.00. The bank records also detail normal daily expenditures which proves that the cash was not withdrawn in order to pay for normal daily expenditures. In short, a lot of money was coming out of the joint checking and savings account in cash and there is no explanation as to what this cash was used to purchase. Now, the Movant has only put the Embezzled Funds at issue, so this court is only concerned with whether the dissipation of the Embezzled Funds is explained by the bank records. Unfortunately for Linda C.

14

Dunn, the bank records do not provide such an explanation. The Embezzled Funds were deposited into the joint bank account from December of 2003 through March of 2005. Over this sixteen-month period, $78,330.00 was taken out in cash. This cash was not used to buy any asset that could be administered in the bankruptcy estate: The Chapter 7 Trustee filed a Report of No Distribution, certifying that there was no property available from distribution from the estate over and above that exempted by law. (Bk. Doc. 105). Linda C. Dunn has offered no explanation as to what happened to the $78,000.00. In addition to not offering any explanation as to what happened to the $78,000.00 in cash, the Linda C. Dunn has not proffered any evidence to suggest that she was not aware of the dissipation of the cash: there is no evidence that the she did not have access to the bank statements, that she was financially unsophisticated, or that she was unaware of the household finances. Seventy-eight thousand dollars is a large sum of money, and this court finds that the failure to explain what happened to such a large sum of money is sufficient grounds to deny Linda C. Dunn her discharge pursuant to § 727(a)(5).

The Movant has shown that Linda C. Dunn experienced a loss of the Embezzled Funds, and that she has failed to provide a satisfactory explanation of that loss. Therefore, Linda C. Dunn should be denied her discharge pursuant to § 727(a)(5) as a matter of law.

## II. Section 523

Having determined that the Linda C. Dunn is not entitled to a discharge pursuant to §727(a)(5), none of her debts will be discharged. Therefore, it is not necessary to address whether the Movant is entitled to judgment as a matter of law on the causes of action brought pursuant to §523.

15

## CONCLUSION

The facts set forth in the Movant's Motion for Summary Judgment are uncontroverted. As such, the Movant established that there is no genuine issue of material fact as to the causes of action set forth in the Motion for Summary Judgment. The Movant established that it was entitled to judgment as a matter of law on the cause of action brought pursuant to § 727(a)(5): The Movant proved that Linda C. Dunn experienced a loss of assets, and Linda C. Dunn failed to satisfactorily explain the loss of such assets. Having established that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, summary judgment is due to be granted pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056. Therefore, the Movant's Motion for Summary Judgment is due to be **GRANTED** and Linda C. Dunn's discharge is due to be **DENIED** pursuant to § 727(a)(5). **DONE and ORDERED** this December 3, 2010.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge